UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JASMINE LAMB,                          )
                                       )
           Movant                      )
                                       )
     v.                                )        1:26-mc-00057-SDN
                                       )
ALLIANCE FOR TRIBAL CLEAN              )
ENERGY,                                )
                                       )
           Respondent                  )

**RECOMMENDED DECISION ON MOTION TO QUASH
OR MODIFY SUBPOENAS[1]**

Movant Jasmine Lamb (Lamb) seeks to quash two subpoenas, one directing her to

testify at a deposition and another commanding her to produce documents in connection

with a civil action pending in the United States District Court for the District of Oregon

(the Oregon case).  (Motion, ECF No. 1.)  Alternatively, Lamb asks the Court to modify

the subpoenas.  Lamb, who is not a party to the Oregon case, contends that the information

sought by the subpoenas is irrelevant to the case, that compliance would require her to

produce protected information, and that the production would be unduly burdensome.

Respondents, Alliance for Tribal Clean Energy (Alliance) and Chéri Smith, are the

plaintiffs in the Oregon case: they oppose the motion.  (Opposition, ECF No. 21.)

---

[1] An order disposing of a motion to quash a subpoena is dispositive and a recommended decision is therefore
appropriate when, as here, the decision is determinative of the entire matter before the Court.  *See In re
Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 68 n.2 (1st Cir. 2011).

Intervenors—7Skyline, LLC, Jennifer Rouda, and David Harper—are the defendants in the Oregon case: they support the motion.  (Intervenors' Reply, ECF No. 23.)

Following a review of the record, and after consideration of the parties' arguments, I recommend that the Court deny the motion to quash and grant in part the motion to modify the subpoena to produce documents.

**LEGAL STANDARD**

In general, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," inter alia, "the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

A motion to quash is governed by Federal Rule of Civil Procedure 45, which provides in pertinent part that a district court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). "Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(d)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena."  9A Wright & Miller's Federal Practice & Procedure § 2463.1 (3d ed. 2026) (footnote omitted) (hereinafter Wright & Miller).  Determining a subpoena's reasonableness "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it"—an evaluation that "calls upon the trial court to consider whether the information [sought] is necessary and whether it is available from any other

2

source." *Id.* (footnotes omitted). Although the analysis of a party's request to quash a subpoena is case-specific, pertinent considerations include "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted).

A party moving to quash a subpoena bears the burden of establishing that the aspects of the subpoena at issue impose an undue burden on the party – i.e., that the balance of relevant factors tips in the party's favor. *See In re W. Me. Acctg. Servs., LLC*, No. 2:22-mc-00081-KFW, 2022 WL 2604597, at *1 (D. Me. July 7, 2022). A party seeking to quash a subpoena on the basis that it requires disclosure of privileged or protected matter shoulders the burden of establishing the applicability of the privilege or other basis for protection. *FEDEQ DV004, LLC v. City of Portland*, No. 2:21-cv-00327-GZS, 2022 WL 17082083, at *2 (D. Me. Nov. 18, 2022). "The standard requires 'sufficient information to allow the court to rule intelligently on the privilege claim'" or claim of protection from disclosure. *Id.* (citing *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991)).

"In response to a motion to quash a subpoena, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (quotation marks and alteration omitted). The standards of relevance and proportionality governing a discovery dispute between the parties to a suit obtain equally to a subpoena served on a non-party. *FEDEQ DV004, LLC*, 2022 WL 17082083, at *3.

However, "concern for the unwanted burden" that a subpoena imposes on a non-party "is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

## BACKGROUND

Lamb seeks to quash a subpoena, served on her by the Alliance and Smith, requiring that she produce certain documents in connection with the Oregon case, which is captioned *Alliance for Tribal Clean Energy, et al. v. 7Skyline, LLC et al.*, No. 3:24-cv-01818-JR.[2]

In the Oregon case, the Alliance and Smith have sued 7Skyline, Rouda, and Harper for misappropriation of trade secrets and breach of loyalty, and also asserted claims against Rouda for defamation and tortious interference with contract or business relationships. A review of the operative complaint in the Oregon case reveals the following pertinent details: The Alliance is a nonprofit whose "mission is to support Native American Tribes in developing clean energy projects," and Smith is the founder and CEO of the Alliance. (Complaint ¶¶ 10, 14, ECF No. 21-5.) Rouda and Harper were employed by the Alliance from the spring of 2023 until April 19, 2024, when they both resigned. (*Id.* ¶¶ 24-25, 28.) At some point, Rouda and Harper formed 7Skyline. (*Id.* ¶¶ 12-13, 30; *see also* Tobias Dec. Ex. 2, ECF No. 21-6.) Lamb has had professional relationships with the Alliance and 7Skyline. (*See* Tobias Dec. Ex. 2; Tobias Dec. Ex. 3, ECF No. 21-7; Tobias Dec. Ex. 4, 21-8; Tobias Dec. Ex. 9, ECF No. 21-13; Tobias Dec. Ex. 10, ECF No. 21-14.) She asserts that she has never been employed by either of them. (Motion at 2.)

---

[2] Lamb also filed a motion to quash with the District Court in Oregon. That motion has since been denied as moot upon her representation that she filed that motion in error.

The subpoena originally commanded Lamb to produce documents responsive to five requests.  (Subpoena to Produce Documents, ECF No. 1-1.)[3]  After a written meet-and-confer, the Alliance and Smith removed three of the requests.  (*See* Motion, Ex. A; Opposition at 10.)  In response to Lamb's motion, the Alliance and Smith further narrowed their requests: they now seek all documents and communications, including text messages, emails, and social media messages, dated on or after April 19, 2024, relating to or referencing Smith or the Alliance (or ATCE) which Lamb created, sent to, or received from any person other than Rouda, Harper, or 7Skyline and its employees (except when those employees were using personal phones, computers, or email accounts to communicate with Lamb).  (Subpoena to Produce Documents; Opposition at 10, 16, 18-19.)[4]

## DISCUSSION

According to the Alliance and Smith, the information requested from Lamb is at least relevant to the defamation claim against Rouda.[5]  The defamation claim is based on

---

[3] According to counsel for the Alliance and Smith, the subpoenas to Lamb were motivated in part by the failure of Rouda, Harper, and 7Skyline to timely comply with their discovery obligations in the Oregon case.  (Stoner Dec. ¶ 7, ECF No. 21-2.)

[4] The Alliance and Smith ask the Court to reserve the issue of whether Lamb should also be required to produce communications with Rouda, Harper, and 7Skyline employees using 7Skyline equipment and/or email accounts.  (Opposition at 19.)  Although Rouda, Harper, and 7Skyline have produced more than 13,000 pages of documents in discovery in the Oregon case since the motion was filed, the Alliance and Smith are unsure whether this production includes all of Lamb's communications with Rouda, Harper, and 7Skyline employees.  (*Id.*)  The question here is whether to quash the subpoena as modified.  I discern no reason to comment on a scenario that might not develop – i.e., a scenario in which, in the future, the Alliance and Smith determine that production from Rouda, Harper, and 7Skyline did not include all of Lamb's relevant communications with Rouda, Harper, and 7Skyline employees.

[5] Lamb asserts that she was informed by an employee of Smith that she might also be sued by Smith.  (Motion at 1.)  The Alliance and Smith have represented that they have no intention of filing an action in Maine against Lamb at this time.  (Opposition at 13 n.6.)

allegations that after Rouda separated from the Alliance on April 19, 2024, she began falsely telling third parties that Smith lacks Native ancestry or heritage and that the Alliance was mismanaging donor funds. (Complaint ¶¶ 33-34, 77.) Although Lamb's name does not appear in the complaint, she is referenced in the pleading as a "member of the Passamaquoddy Tribe" who questioned Smith's ancestry. (Complaint ¶ 37.)

A review of the record suggests that Lamb is alleged to have been involved in communications with Rouda and others in the energy community questioning Smith's Native ancestry: she is alleged to have questioned Rouda about Smith's Native ancestry in May 2024, obtained a genealogy report challenging Smith's Native ancestry, and then shared that report with Rouda and others in the energy community. (Tobias Dec. Ex. 2; Tobias Dec. Ex. 8 at 5-6, ECF No. 21-12; May 6 Tobias Dec. Ex. 1 at 7, ECF No. 28-2; Tobias Dec. Ex. 14 at 7, ECF No. 21-18; Ahmann Dec. ¶¶ 3-6, ECF No. 28-7; Ahmann Dec. Ex. 1, ECF No. 28-8; Ahman Dec. Ex. 2, ECF No. 28-9.) The record also suggests that Lamb is alleged to have been involved in conversations with at least one of the Alliance's donors, suggesting that the Alliance was not appropriately managing donor funds. (Tobias Dec. Ex. 8 at 4.)

Smith's ancestry and what was said about her ancestry appear to be important issues in the Oregon case. While I understand that Lamb challenges the suggestion that any of her communications could plausibly support a defamation claim against her, I am satisfied that Lamb's communications regarding Smith and the Alliance are relevant to the claims and defenses at issue in the Oregon case. Smith and the Alliance have presented a plausible argument that Lamb might have been a source of some of the information that Rouda used

6

to question Smith's ancestry, and that, perhaps at Rouda's direction or with Rouda's encouragement, Lamb might have questioned Smith's ancestry in communications to others. The possible source of Lamb's knowledge of Smith's ancestry and the extent to which Lamb communicated with others about the subject are relevant areas of inquiry. Although I am persuaded that Lamb's communications are relevant, I am not convinced that "all documents" created by Lamb are relevant. Such a request is also overly broad. I will, therefore, recommend that the Court limit the request to communications. Particularly given the reduced time period of the modified request and the modification I will recommend, the scope of the request is also proportional.

Further, Lamb's claim of undue burden lacks specificity and, therefore, is unconvincing. Rule 45 does not protect a person subject to a subpoena from any burden; its protections extend only when the burden imposed is shown to be "undue" – i.e., disproportionate to the benefit of enforcing the subpoena. Here, given the modifications made by the Alliance and Smith, the subpoena to produce documents is appropriately tailored temporally, and the request is described with a reasonable degree of particularity, reducing concerns that the request might be overly broad. Aside from references to her status as a busy graduate student with limited financial means, Lamb has not provided evidence regarding the manner or extent of the burden of producing the requested documents. Lamb's general assertions are insufficient to establish that it would be unduly burdensome for her to conduct a text-based search of her electronic communications during the subject timeframe and to produce documents responsive to the modified request. *See United States v. Me. Dept. of Educ.*, No. 1:25-cv-00173-SDN, 2026 WL 880320, at *2 (D.

7

Me. Mar. 31, 2026) (reaching same conclusion based on "vague asseverations" that compliance with subpoena would be "resource-intensive" and "time-consuming").[6]

Similarly, Lamb has not established that the subpoena would require her to divulge protected information. She claims that compliance would require her to produce "private and confidential matters, including [her] personal, academic, and human-subjects research communications." (Motion at 1.) She has not, however, adequately described the information that she seeks to protect, nor has she provided sufficient details for the Court to determine that compliance would result in the disclosure of protected information.[7] Lamb is not immune from discovery simply because she claims, without record evidence, that some responsive documents might be confidential. *See FEDEQ DV004, LLC*, 2022 WL 17082083, at *3 (indicating that documents "are not immune from discovery merely because they are subject to contracts requiring that they be maintained confidentially") (quotation marks omitted). If after locating the documents, Lamb believes that some of the documents contain confidential information or information that is personal and not relevant, she can seek a protective order as to that information.

---

[6] The Alliance and Smith are required "to take reasonable steps to avoid imposing undue burden or expense upon" Lamb. Fed. R. Civ. P. 45(d)(1). In accordance with the Rule, the Alliance and Smith presumably will reimburse Lamb for any reasonable costs she incurs in connection with the production of the documents. In the event of a dispute regarding the costs of production, the parties can ask the Court to resolve the issue.

[7] To the extent that Lamb seeks to protect personally identifying information concerning her human subjects research, the Alliance and Smith have proposed workable solutions: that information may be redacted, or the subject of a request for a protective order. (*See* Motion Ex. A.) To the extent that the Intervenors seek to protect "financial or other protectable information such as trade secrets, confidential business plans, and private agreements" between Lamb, Rouda, Harper, and 7Skyline, (*see* Intervenors' Reply at 3), that information can also be protected by similar means.

8

Finally, Lamb has not offered a compelling reason that would excuse her from appearing for a deposition; her arguments are mainly directed toward the subpoena for the documents.  On this record, I discern no basis to prevent the Alliance and Smith from conducting the requested deposition.

### CONCLUSION

Following a review of the record and after consideration of the parties' arguments, for the reasons explained above, I recommend that the Court deny the motion to quash the subpoenas.  I also recommend the Court grant in part the request to modify the subpoena to produce documents as explained herein.[8]

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

[8] If the Court adopts the recommendations, Lamb would be required to (a) produce all communications, including text messages, emails, and social media messages, dated on or after April 19, 2024, which she created, sent to, or received from "any person" related to or referencing Cheri Smith, (b) produce all communications, including text messages, emails, and social media messages, dated on or after April 19, 2024, which she created, sent to, or received from any person relating to or referencing "Alliance for Tribal Clean Energy," "ACTE," or the "Alliance," and (c) appear for a deposition. "Any person" shall not, however, include Jennifer Rouda, David Harper, or 7Skyline employees using 7Skyline equipment or accounts.

9

(14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of June, 2026

10